IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Organizational Strategies, Inc., Integration Casualty Corp., Systems Casualty Corp., and Optimal Casualty Corp.,**

Plaintiffs,

v.

**The Feldman Law Firm LLP, Stewart A. Feldman, Capstone Associated Services (Wyoming) LP, Capstone Associated Services, Ltd., and Capstone Insurance Management, Ltd.,**

Defendants.

Civil Action No. 13-764-RGA

MEMORANDUM OPINION

Neil R. Lapinski, Esq., Gordon, Fournaris & Mammarella, Wilmington, DE, attorney for Plaintiffs.

Kelly E. Farnan, Esq., Richards, Layton & Finger, Wilmington, DE, attorney for Defendants.

February 12, 2014

ANDREWS, U.S. District Judge:

Presently before the Court are Defendants The Feldman Law Firm LLP, Capstone Associated Services (Wyoming) LP and Capstone Insurance Management, Ltd.'s Motion to Dismiss or, in the Alternative Stay (D.I. 24), Defendant Stewart A. Feldman's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 26), Defendant Capstone's Joinder in Other Defendants' Previous Motions to Dismiss and Its Motion to Dismiss for Lack of Subject Matter Jurisdiction or Alternatively to Transfer to the Southern District of Texas (D.I. 40), as well as related briefing.

This case arises out of an agreement between Plaintiff Organizational Strategies, Inc. ("OSI") and Defendants to set up and run three captive insurance companies, Plaintiffs Integration Casualty Corp., Systems Casualty Corp, and Optimal Casualty Corp ("the captives"). Captive insurance companies are owned by the policyholder and result in a number of tax advantages. Because captives qualify as an insurance company under the Internal Revenue Code, premiums paid to the captive are deductible business expenses. Because the policyholder owns the captive, they have control over the investment of the premiums. Additionally, if the captive has $1.2 million or less in annual premium income, it is taxed only on its investment income.

In this case, the Feldman Law Firm was responsible for setting up the three captives and Capstone was responsible for managing them. In 2011, in the course of an audit of OSI, an independent auditor questioned the amount of the premiums paid to the captives. OSI engaged an independent captive insurance consultant, who concluded that the premiums were too high, and would not withstand scrutiny by the Internal Revenue Service. OSI alleges that this would have resulted in the captives losing their status as bona fide insurance companies, thereby negating their tax advantages. OSI asked Defendants to adjust the premiums. Defendants refused, leading

1

to this suit. Defendants contend that this suit is covered by an arbitration agreement. Plaintiffs dispute this.

There are numerous arguments in the briefs. Because the Texas arbitrator has decided that there are valid arbitration agreements between the parties, Defendants argue that should be the end of the matter. Furthermore, Defendants argue that because the arbitration has already taken place, Plaintiffs are bound by *res judicata* and collateral estoppel. These arguments put the cart before the horse. If there was no agreement to arbitrate in the first place, then what happened in the arbitration is irrelevant.

The agreement at issue is in two parts, the Engagement Letter (D.I. 30-1 at 2) and the Capstone Services Agreement ("Services Agreement") (D.I. 30-1 at 20). The Engagement Letter lists as enclosures an Engagement Retainer Invoice, Guidelines on Firm Administration and Billing, Exhibit A - Duties and Responsibilities of Capstone and The Feldman Law Firm, Exhibit B – the Capstone Services Agreement, Exhibit C – Tax Risks, and Exhibit D – Comparison of Types of Captives. Only the Engagement Letter is executed. The parties, however, agree that the Engagement Letter and Services Agreement are part of an integrated agreement. (D.I. 30 at 2).

The Guidelines on Firm Administration and Billing contains the arbitration language, which states:

> With respect to any and all other[1] disputes or claims whatsoever between us related to or arising out of our services (but in <u>no event</u> for attorney's fees and/or costs), such shall be submitted to a recognized, neutral, arbitral association or arbitrator for resolution pursuant to its single arbitrator, expedited rules…
>
> The parties agree that the issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person. That is, the question of whether a dispute itself is arbitrable shall be decided solely by the arbitrator and not, for example, by any court. In so doing, the intent is to divest the courts of all powers in

---

[1] The Guidelines state that fee disputes shall be decided by the Houston Bar Association's Fee Dispute Committee.

2

> disputes involving the parties, except for the confirmation of the award and enforcement thereof.

(D.I. 30-1 at 16-17) (footnote added). The Services Agreement contains a venue and jurisdiction clause, which states:

> For purposes of any dispute arising under Article V of this Agreement, the sole venue and jurisdiction for resolution of such disputes shall be courts located in Harris County, Texas.[2] As to other disputes arising under this Agreement (with the express exception of disputes arising under Article V hereof), venue and jurisdiction shall be in Delaware, it being expressly recognized that parallel proceedings may thereby result.

(D.I. 30-1 at 28) (footnote added). The Services Agreement also states that "[a]ny conflict between this Agreement and the Engagement Letter shall be construed in a manner giving precedence to this Agreement in all cases whatsoever." (D.I. 30-1 at 21).

Plaintiffs argue that there is no valid arbitration agreement because the venue and jurisdiction clause in the Services Agreement conflicts with the arbitration agreement in the Engagement Letter, and therefore there is no agreement to arbitrate. In distinguishing between "Article V of this Agreement" and "other disputes," the Services Agreement specifically refers to the "courts located in Harris County," whereas the same passage does not use the term "courts" in reference to venue in Delaware. Plaintiffs maintain that this results in an ambiguity, and *contra proferentem* dictates that ambiguities are construed against the drafter. Defendants argue that the absence of the term "courts" means that the two provisions do not conflict, *i.e.*, that the Delaware venue provision does not preclude arbitration being mandatory.

While Plaintiffs point to one principle of contract interpretation, there are countervailing principles as well. For instance, a contract should be construed "to give effect to all the provisions of the contract so that none will be rendered meaningless." *El Paso Field Servs., L.P.*

---

[2] Neither side contends that the claims at issue arise under Article V.

3

*v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 808 (Tex. 2012) (internal citations omitted).[3] Additionally, "[a] presumption exists that every provision of a contract was included for a particular purpose." *TM Prods., Inc. v. Nichols*, 542 S.W.2d 704, 708 (Tex. Civ. App. 1976). "If we determine that the contract's language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law." *El Paso*, 389 S.W.3d at 806.

Applying these principles of contract interpretation, I find that the contract is not ambiguous. If the Delaware venue clause were read to permit jurisdiction in the courts of Delaware, then the arbitration clause would be meaningless.[4] Further support for this finding is in the specific wording used in the Services Agreement venue clause. In describing the venue and jurisdiction for claims arising under Article V, the Services Agreement refers to "courts located in Harris County, Texas." (D.I. 30-1 at 28). As for other disputes, the Services Agreement states that "venue and jurisdiction shall be in Delaware." *Id.* The drafters could have used the term "courts" had they intended for disputes to be litigated in the Delaware courts. But they did not. The absence of the term "courts" must be given meaning, or else the use of the term "courts" in the preceding sentence would be superfluous. An interpretation which permitted this lawsuit would go against the presumption that every provision has a purpose. Because the contract is not ambiguous, *contra proferentum* does not apply.

The Court's interpretation makes sense of the contract as a whole. It has a strong preference for arbitration. Certain fee disputes would be handled by the Houston Bar

---

[3] The agreement provides that Texas law applies. (D.I. 30-1 at 28)
[4] Unless the venue provision only applies to claims that arise under the Services Agreement, not to those that arise under the Engagement Letter. The parties did not argue this point, however, and even if they had, there is a presumption that a claim "should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Association. Article V disputes belong in the Harris County courts. All other disputes must be resolved by a Delaware arbitrator.

Plaintiffs also argue that the arbitration clause is void due to the Feldman Law Firm's ethical violations. Essentially, they argue that fraud in the inducement negates the arbitration clause. For support, Plaintiffs cite to *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006). However, *Buckeye* differentiated between claims of fraud in the inducement regarding the contract as a whole and fraud in the inducement regarding an arbitration clause itself. *Id*. The Court explained that "if the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the making of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id*.

Plaintiffs' arguments are directed to the contract as a whole, not the arbitration agreement itself. They maintain that the contract was against public policy because it involved a fee splitting arrangement and should therefore be void. I need not reach this argument. Plaintiffs have not alleged that they were unaware of the terms of the arbitration agreement or that there was any fraud involved with the arbitration agreement itself, only the contract as a whole. Those questions must be resolved by an arbitrator under the arbitration agreement.

Since the integrated agreement requires arbitration except for limited circumstances not present in this case, the motions to dismiss for lack of subject matter jurisdiction must be granted.[5] A separate order will be entered.

---

[5] While Defendant Stewart A. Feldman did not join in these motions to dismiss, he is also covered by the arbitration agreement. (D.I. 30-1 at 16). Therefore, there is no subject matter jurisdiction over the claims against Mr. Feldman, and I therefore dismiss the case in its entirety.